UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| V. : | CASE NO. 1:18-CR-00173-WES-LDA |
| : | |
| STEPHEN P. LANGLOIS : | |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Stephen Langlois, by and through counsel, submits this memorandum to aid the Court with imposing a sentence that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553 (a). For the reasons below, Mr. Langlois requests a sentence that does not exceed 42 months.

### I. BACKGROUND

On October 4, 2018, law enforcement executed a search warrant at Mr. Langlois' home located at 26 Brett Court, Warwick, RI 02886. Police obtained the warrant after other law enforcement agents in another district took down a website and/or server that facilitated the transfer of child pornography. Information gleaned from that out-of-district investigation revealed that Mr. Langlois subscribed to the site under investigation and downloaded child pornography on multiple occasions between September 2017 and October 2017. Agents seized Mr. Langlois' electronic devices, to include two (2) laptops, and conducted a forensic analysis of these items, which revealed over 100 images.

After this discovery and pursuant to a plea agreement between the parties, the government filed, on December 18, 2017, a one-count information charging Mr. Langlois with Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4). He appeared before the Court on January 2, 2019 for arraignment. At that time, he entered a plea of not guilty to the charged offense and was released on $10,000.00 unsecured bond with special conditions.

On February 7, 2019, Mr. Langlois appeared for a change of plea hearing. The Court accepted his guilty plea. The matter is currently scheduled for sentencing on May 15, 2019. U.S. Probation issued its final presentence report (PSR) on May 6, 2019. The PSR calculates Mr. Langlois' criminal history category at I and total offense level at 28, which results in an advisory guidelines range of 78 to 97 months. The Defense has no objection to the final PSR.

## II.    SENTENCING FACTORS AND CONSIDERATIONS

The District Court is required to fashion a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment set forth in 18 U.S.C. § 3553 (a). *United States v. Booker*, 543 U.S. 220 (2005). Sentencing should begin with a calculation of the applicable sentencing guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)). The guidelines calculation is a starting point and initial benchmark for the Court to consider, however, it is not the only sentencing consideration. *Id.*

A Court may not presume the guidelines range is reasonable but must make an individualized assessment of each defendant based upon the facts presented in each case. *Gall,* 128 S. Ct. at 597 (emphasis added). After both parties are afforded an opportunity to argue for whatever sentence they deem appropriate, the Court must then consider the factors[1] of 18 U.S.C.

---

[1] To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider the following:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed:
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    (3) the kinds of sentences available;
    (4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
    (5) any pertinent policy statement issued by the Sentencing Commission;

§ 3553 (a) to determine the most appropriate sentence for the instant case. *Id*. In the instant case, Mr. Langlois asks the Court to consider a number of important facts when evaluating his sentencing recommendation of no more than 42 months.

Mr. Langlois makes no effort to minimize or to marginalize the seriousness of his admitted misconduct. However, he asks the Court to note that before the arrest, Mr. Langlois had no criminal history whatsoever. He was known by all to be dedicated and loving father, fiancé, employer, and coach.

Since his arrest, Mr. Langlois has done virtually everything possible to mitigate his actions. He cooperated with police at the time of the warrant execution on October 4, 2018 and seizure of his personal property. He also waived his rights that day and admitted to authorities his involvement with child pornography. Following the warrant execution, he was not immediately charged or placed under arrest. He retained counsel and through his attorney, communicated with the government, previewed its evidence, and negotiated a plea agreement. He then self-surrendered before the Court for his arraignment and detention hearing. He further self-reported to Court for his change of plea hearing and the same can be expected of him at the time of sentencing.

In addition to his cooperation with law enforcement and the judicial process, Mr. Langlois took personal steps toward self-rehabilitation. Within days of his arrest, he self-referred to and has since engaged in weekly sex offender outpatient mental health counseling with Dr. David Ingle, Psy.D. In January 2019, Mr. Langlois also began attending outpatient mental health treatment through Butler Hospital to address his diagnosed conditions of

---

(6) the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553 (a).

depression and anxiety.  Mr. Langlois has shown signs of significant improvement in counseling and will benefit from his continued attendance.

Throughout his period of pretrial release, Mr. Langlois has also dealt with challenging collateral issues with regard to DCYF and its desire that he not cohabitate with his children. DCYF's involvement with the family and its imposition of these requirements were triggered by Mr. Langlois' misconduct and the department's independent duty to protect the health and welfare of all, to include Mr. Langlois' children.  As difficult as this was, Mr. Langlois relocated out of the home, so his kids could remain living with their mother.  This is another example of Mr. Langlois' efforts to make the best out of this awful situation.

Mr. Langlois is age 34.  He is the son of Stephen Langlois and Cathy Langlois.  His father, Stephen Langlois, is age 60, a retired machinist and suffers from a severe case of diabetes that has caused him to endure multiple surgeries and amputations.  His mother, Cathy Langlois, is age 59 and works part-time as a dental assistant.  Mr. Langlois' parents reside in Rotunda West, Florida.  He has one sister, Amy Labrie, who is age 31, lives in North Port, Florida and works as a behavioral therapist.  His family is aware of his legal circumstances and remains supportive of him, especially during this difficult time.

In 2005, Mr. Langlois was married to Nova Hanson who he met while enlisted on active duty in the United States Army.  This short-lived marriage ended in divorced in 2009.  The silver lining is the couple had one child, Bailee Langlois, who is age 11.  Because Ms. Hanson re-enlisted and Mr. Langlois separated from military service, he received custody of their daughter, and has had primary custody of Bailee since she was age 2.  Mr. Langlois fears that once sentenced to a term of incarceration, Bailee will be forced to return to mom, which will be a traumatizing adjustment for her.

Mr. Langlois is currently in a long-term relationship with Nicole Mailloux. They have been together since 2011 when they began dating and in 2017 became engaged. Together they have one child, Brooke Langlois, who is age 1. Ms. Mailloux (like Mr. Langlois) also has one child from a previous relationship, Brody Beagan, who is age 8. Mr. Langlois, although not Brody's biological father, has raised Brody as his own. Brody is unaware that Mr. Langlois is not his biological father. Given the children's young age, Mr. Langlois' sentence of incarceration will be difficult for this young family, especially Ms. Mailloux who – for all intents and purposes – will be functioning as a single mother while their father is away.

Mr. Langlois is the breadwinner or main source of support for his family. After graduating Coventry High School in 2002 and serving honorably in the Army from 2003 to 2007, Mr. Langlois learned the trade of floor installation. He first worked for and under his uncle, George Pelletier, at his flooring company in Coventry, RI. Mr. Langlois eventually started his own company, American Flooring Covering in August 2009, where he receives floor installation contracts from large retailers such as Home Depot, Lowe's and Ruggieri's Flooring. Mr. Langlois has been quite successful in this field, even after he was criminally charged. He hopes the Court will minimize his jail sentence as much as possible, so he may reunite with his family and resume working to provide them with necessary financial support.

### III.   SENTENCING IN CHILD PORNOGRAPHY CASES

The Defense suggests to the Court that determining appropriate sentences in child pornography cases is not easy. The guidelines are a direct function of the quantity of images and/or videos found in possession of the offender. While a large volume of drugs in narcotics case is objectively an aggravating factor, the same cannot be said for child pornography. With this type of offense, the offender is typically downloads a zip folder that contains an unknown

number of images and videos.  Often times the offender is unaware of the exact quantity of material and precise nature / quality of the materials until the download is complete.  Because of this, a high volume is not as clean an aggravating factor as one would attribute it to either drugs in a narcotics case or loss amount in a white-collar case.

In assessing the propriety of the parties' recommendation for Mr. Langlois, the Court may wish to consider some other examples from this District where other defendants have been sentenced for committing child pornography offenses.

First, in preparation for sentencing in a prior similar case, Defense Counsel conducted an inquiry with the Rhode Island Judiciary for state sentences imposed in child pornography cases from 2006 to 2016.  The inquiry yielded 1,084 cases that include charges for possession, distributing and producing child pornography.  Of these cases, the Courts imposed actual jail sentences in 74 cases.  These numbers yield a statistic that a term of incarceration was imposed in 11 percent of child pornography cases prosecuted in Rhode Island Superior Court over the decade of time for which the data pertained.[2]  The Court should take note of how dramatically different its neighboring Superior Court is adjudicating the same misconduct.

With regard to federal cases, the Defense offers the following.

1. **United States v. DeCredico, 15-CR-00036**: following Defendant's plea to possessing child pornography material, he received a sentence of one year and one day.  As for his guidelines, he was in criminal history category I and had a total offense level of 28 (base offense 18, +2 for prepubescent minor material, +4 for sadistic or masochistic material, +2 for use of a computer, and +5 for over 2600 images and 375 videos).

---

[2] The data provided by the RI Judiciary is available for inspection by the Court upon request.  It was provided to the government via email in the form of an attached excel spreadsheet on July 7, 2017

2. **United States v. Skally, 16-CR-00098:** following Defendant's plea to possessing child pornography material, he received a sentence of 30 months. As for his guidelines, he was in criminal history category I and had a total offense level of 28 (base offense 18, +2 for prepubescent minor material, +2 for use of a computer, and +5 for 418 images and 284 videos).

3. **United States v. Swant, 18-CR-00016:** following Defendant's plea to possessing child pornography material, he also received a sentence of 30 months. As for his guidelines, he was in criminal history category I and had a total offense level of 30 (base offense 18, +2 for prepubescent minor material, +2 for distribution to others, +2 for use of a computer, +4 for material involving exploitation of a toddler, and +5 for more than 600 images).

Mr. Langlois ask the Court to take into consideration these other, arguably more serious cases when imposing his sentence so as to avoid imposing unwarranted disparate sentences of similar situated defendants.

## IV. MISCELLANEOUS REQUESTS

Mr. Langlois asks the Court to recommend to the Bureau of Prisons (BOP) that he be allowed to serve his sentence at a confinement facility as close to Rhode Island as possible so he may maintain contact with his family while incarcerated. He also asks the Court to recommend that he be allowed to participate in RDAP given his admitted daily marijuana use.[3]

## IV. ATTACHMENTS

A. Statements of Support; and

B. Photos.

## V.

---

[3] PSR, ¶.56.

## W. CONCLUSION

Based upon the foregoing, Mr. Langlois respectfully asks the Court to impose a sentence of no more than 42 months, which he contends is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553 (a).

Respectfully submitted this 13th day of May 2019.

> Respectfully submitted
> Defendant,
> Stephen Langlois
> By his Counsel
>
> /s/ John L. Calcagni III, Esq.
> John L. Calcagni III (Bar No.: 6809)
> Law Office of John L. Calcagni III, Inc.
> One Custom House Street, Third Floor
> Providence, RI 02903
> Phone: (401) 351.5100
> Fax: (401) 351.5101
> Email: jc@calcagnilaw.com

## CERTIFICATION

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on May 13, 2019.

> /s/ John L. Calcagni III, Esq.
> John L. Calcagni III (Bar No.: 6809)
> Law Office of John L. Calcagni III, Inc.
> One Custom House Street, Third Floor
> Providence, RI 02903
> Phone: (401) 351.5100
> Fax: (401) 351.5101
> Email: jc@calcagnilaw.com